ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* BEARDEN.

## Opinion delivered March 17, 1913.

1. RELEASE—INCAPACITY TO CONTRACT.— It is no defense to an action for damages for personal injuries that plaintiff executed a release to the defendant without any fraud practiced on the plaintiff, if the plaintiff was incapable of understanding what she was doing. (Page 366.)

2. RELEASE—FRAUD—BURDEN OF PROOF.—The burden of proof is upon plaintiff to show that a release executed by her was obtained by fraud or misrepresentations. (Page 367.)

3. PLEADING—COMPLAINT—AMENDMENT.—When plaintiff without leave of the court marked out with a pencil a portion of the complaint, the action of the court in refusing to permit defendant's counsel to read such portion to the jury in his opening statement, is equivalent to granting permission to plaintiff to amend her complaint by striking out that portion of it, and the portion stricken out is no longer a part of the pleadings. (Page 367.)

4. TRIAL—OPENING STATEMENT—FACTS STATED IN THE PLEADINGS.—The object of the opening statement is to get the issues and facts the parties expect to prove before the jury; and facts stated in the pleadings and read in the opening statement, except so far as admitted, can not be considered by the jury save when proved by competent testimony. (Page 367.)

5. EVIDENCE—ADMISSIONS IN PLEADINGS.—A plaintiff is not conclusively bound by statements in her complaint, and they are subject to explanation. If counsel for defendant desired to contradict plaintiff by any statement made in her complaint, the complaint should have been offered in evidence for that purpose. (Page 368.)

Appeal from Lonoke Circuit Court; *Eugene Lankford*, Judge; affirmed.

*Thos. B. Pryor*, for appellant.

1. In withdrawing instruction 3 from the jury the court eliminated one of appellant's main defenses, *i. e.*, the release, and in his remarks to the jury the court eliminated the essential element to avoid the release, the question of fraud, and in effect told the jury that no matter if the claim agent was acting in good faith yet the release would not be binding upon appellee unless she had sufficient intelligence to understand the nature of the release. 87 Ark. 614; 136 Fed. 118.

2. It was error to refuse to permit appellant to read to the jury, in his opening statement, a portion of the complaint which had been marked out with a pencil, no leave having been granted by the court to amend the complaint by striking out such portion thereof.

*Trimble & Trimble*, for appellee.

1. The jury could not have been misled by the instruction of the court in withdrawing instruction 3. They were specifically directed to consider in connection with the corrected instruction all the others given, and instructions 8 and 9 given at appellant's request fully covered the question of fraud. 105 Ark. 467.

2. The part of the complaint counsel sought to read was marked out as he admits. It was not a part of the record and it could have served no legitimate purpose to read it to the jury.

HART, J. Appellee instituted this action against appellant to recover damages for injuries alleged to have been received by her, through appellant's negligence while alighting form one of its passenger trains. This is the second appeal. On the former appeal the judgment was reversed for the error of the court in giving certain instructions. The opinion on that appeal is reported in 30th Arkansas Law Reporter, page 471, and reference is made to it for a more extended statement of the issues involved. There was a verdict and judgment

in favor of appellee in the court below and the appellant
has duly prosecuted an appeal to this court.

The answer of appellant, among other things, al-
leges that after appellee received her injury, in consider-
ation of the sum of five dollars paid to her, by an instru-
ment in writing, she released and discharged the appel-
lant from all claims and demands by reason of the inju-
ries alleged in her complaint.

The principal ground relied upon for a reversal of
the judgment by counsel for appellant is that the court
erred in its instructions on the question of release.   On
this question the court, at the request of appellant, gave
the following instructions:

"3.   If you find from the evidence that there was a
compromise settlement between the plaintiff and one of
the defendant's agents and that there was no fraud or
misrepresentation on the part of the agents of the rail-
road company in obtaining the release executed by the
plaintiff, then your verdict should be for the defendant,
although you may find from the evidence that her in-
juries were more serious than she thought them to be at
the time."

"6.   The law does not undertake to act as a guar-
dian of persons of full age nor to protect them from the
consequences of improvident contracts.   The question
for you to determine in relation to the release executed
by the plaintiff at the time she signed same is whether
she had sufficient mental capacity to understand the
nature and consequences of her act.   If she did, then
such settlement is binding upon the plaintiff, and she can
not recover, and your verdict must be for the defendant."

"8.   If you believe from the evidence that the plain-
tiff accepted five dollars from the agent of the railway
company, knowing that the amount was paid to her in
consideration of the injuries that she had received, and
that she accepted the same with understanding and there
was no fraud or misrepresentation used in obtaining the
settlement from her, then your verdict should be for the
defendant."

"9. The court instructs you that the draft and release which was signed by plaintiff, although by her mark and witness, is *prima facie* evidence of the fact that the settlement was made and the burden of proof is upon the plaintiff to establish that said settlement and release was obtained by fraud or misrepresentation on the part of the defendant's agent, and unless the evidence shows this by a preponderance thereof, then it is your duty to return a verdict for the defendant." Subsequently the court said:

"Gentlemen of the jury, this instruction will be withdrawn: 'If you find from the evidence that there was a compromise settlement had between plaintiff and one of defendant's agents and that there was no fraud or misrepresentation on the part of the agents of the railroad company in obtaining the release executed by the plaintiff, then your verdict should be for the defendant, although you may find from the evidence that her injuries were more serious than she thought them to be at the time.'

"You are not to be governed by that instruction. I overlooked the fact that it said if he practiced no fraud upon her that you should find for the defendant. Even if he practiced no actual fraud, if she was incapable of understanding what she was doing and he knew of that fact, still she would be entitled to recover. Take all the other instructions, together with this correction, I have made as the law in this case."

The action of the court in this regard was assigned as error. It is settled by the opinion in the former appeal in this case and by the case of the *St. Louis, Iron Mountain & Southern Railway Company* v. *Brown*, 73 Ark. 42, that a release of damages for personal injuries may be disregarded by the jury in an action to recover damages for injuries if it appears that it was executed by the plaintiff at a time when his physical or mental condition was such that the jury might find that the party executing the release was incapable of appreciating the character of the instrument and the consequences of ex-

ecuting it. In the instant case appellee was an old woman, being seventy years of age. She could neither read nor write. She was very illiterate and had never transacted any business whatever prior to the time she executed the release. She was approached on the next morning after the injury while, as the jury might have inferred, she was still in a nervous condition, by the claim agent of the appellant and asked to sign a release for the injury she had received. She was carried into the depot and after a short conversation with appellant's agent executed the release in question. She was only there a short time, and her testimony as to what occurred is set out at length in the record. We do not deem it necessary to set it out here. It is substantially the same as on the former appeal, which we held sufficient to send the case to the jury. She testified before the jury. They had an opportunity to judge of her mental condition by observing her demeanor and manner while testifying on the witness stand and the manner in which she answered the questions asked her and, when these matters are considered, we think the jury was warranted in finding that appellee did not understand that the instrument she signed was a release of her claim for personal injuries.

The court in instructions numbered 6, 8 and 9, properly instructed the jury on the question of obtaining the release by fraud or misrepresentation and, under the principles of law announced in the above mentioned cases, the court did not err in modifying instruction numbered 3, by telling the jury that if she was incapable of understanding what she was doing when she signed the release she would be still entitled to recover.

When instruction No. 6 given to the jury at the request of the appellant is considered in connection with the modification made to instruction No. 3, it will be seen that there is no material difference between them.

It is next urged by counsel for appellant that the court erred in not permitting him in his opening statement to the jury to read a certain portion of the complaint which had been marked out with a lead pencil.

He contends that the record shows that there was no leave of the court to amend the complaint by striking out the words in question.

In regard to this it may be said that counsel admits that the portion of the complaint referred to was marked out and the action of the court in refusing to permit counsel to read this portion of the complaint to the jury in his opening statement was equivalent to granting permission to appellee to amend her complaint by striking out that portion of it.

While it is true that the case is ordinarily opened by reading the pleadings, the facts stated in the pleadings, except so far as admitted, could not be considered by the jury until proved to be competent testimony. Thompson on Trials, 2 ed., Vol. 1, par. 260. The object of the opening statement is to get before the jury the nature of the issues to be tried and what each party expects to prove in order to sustain the action or defense, as the case may be. Appellee was not conclusively bound by these statements made in her complaint. They were subject to explanation. If counsel for appellant desired to contradict appellee by any statement made in her complaint, the complaint should have been offered in evidence for that purpose. *Valley Planting Co.* v. *Wise,* 93 Ark. 1.

After the court permitted appellee to amend her complaint by striking out that portion of it referred to, it was no longer a part of the pleadings, and the court did not err in refusing to allow it to be read to the jury by counsel for appellant while making his opening statement.

The judgment will be affirmed.