## REED OIL COMPANY *v.* CAIN.

### Opinion delivered July 13, 1925.

1. FRAUDS, STATUTE OF—CONTRACT NOT TO BE PERFORMED WITHIN YEAR.—An oral contract which fixed no definite date for its performance and which could be entered upon and performed before the expiration of one year from the date when the contract was entered upon was not within the statute of frauds, although the benefit derived from such performance did not come to the other party until after the expiration of the year.

2. FRAUDS, STATUTE OF—CONTRACT NOT TO BE PERFORMED WITHIN YEAR.—An oral contract to secure a reduction in freight rates for a shipper was not rendered void because the consideration

for the appellee's services was fixed at an amount equal to one-half of the sum saved by the shipper for a period of three years after the reduction.

3. Frauds, Statute of—Contract Not to be Performed Within Year.—Oral contracts which can be performed within a year, although there is a possibility, and even a probability, that it may require a longer time, do not come within the statute of frauds, which applies only to agreements that appear from their terms to be incapable of performance, or such as the parties never contemplated should be performed within a year.

4. Appeal and Error—Harmless Error.—Error of the court in finding that plaintiff was entitled to recover on a *quantum meruit*, instead of on an express contract, was not prejudicial to defendant where the evidence would have justified a finding that a larger sum was due under the contract.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; affirmed.

*W. N. Ivie* and *Nance & Seamster,* for appellant.

Wood, J. The appellee instituted this action against the appellant in the Benton Circuit Court on the first of February, 1924. Appellee alleged in substance that the appellant is an association operating in the State of Arkansas under a business trust agreement which authorizes the appellant to be sued in the name of Reed Oil Company. Appellee alleged that he owned the Northwestern Arkansas Traffic Bureau, which is engaged in the business of handling rates and tariffs on shipments of various products over various lines of railways; that prior to August 1, 1922, the St. Louis San Francisco Railway Company had in effect rates on oil and gasoline from Tulsa and other points in Oklahoma to Jonesboro and other eastern points in Arkansas, the rate being 38¢ per 100 pounds, while the rate from the same points in Oklahoma to the city of Memphis, Tennessee, a distance beyond the Arkansas points mentioned, was 28½¢ per 100 pounds; that the appellant employed the appellee to secure from the railroad company a reduction in the freight rates on the products mentioned from the Oklahoma cities to the Arkansas cities which would make that rate the same as the rate from the same cities

to Memphis, Tennessee. Appellee alleged that the appellant agreed to pay him for his services a sum equal to the difference between the rate from the Oklahoma cities to Jonesboro, Arkansas, and the rate from the Oklahoma cities to Memphis, Tennessee, in case said reduction was made. The amount appellants would save by this reduction on shipments during a period of three years was to be ascertained by an average of the shipments of appellant from said cities in Oklahoma to points in Arkansas during and over a period of three years. The appellee alleged that he instituted proper proceedings with various traffic managers and traffic bureaus and with the Southwestern Freight Bureau, and that, as a result of his efforts, on or about the first of September, 1923, he secured a reduction of the freight rates on the products named from the cities in Oklahoma to Jonesboro and other eastern Arkansas cities of 27½¢ per 100 pounds; that the amount which the appellant would have saved as a result of such reduction on shipments during a period of three years was $3461; that appellant agreed to pay appellee fifty per cent. of this amount, or the sum of $1730.52, which sum was a reasonable fee for the services performed by the appellee on behalf of the appellant. Appellee prayed judgment in the sum of $1730.52.

The appellant denied categorically all the material allegations of the complaint. By consent of parties the cause was submitted to the trial court sitting as a jury.

The appellee testified in substance that he was engaged in the business of rate adjustments, claims for over-charges, and general traffic work. He was employed by two or three firms under a salary as their traffic manager and operated under the name of Northwestern Arkansas Traffic Bureau. He was employed by the appellant to secure, if possible, a reduction in rates on refined oils from Oklahoma producing points to Jonesboro, Arkansas, a city located on the Frisco railroad between the Oklahoma cities and Memphis, Tennessee. He made several trips to St. Louis and other points

to get the rate to Jonesboro equalized with the rate to Memphis. The rate to Jonesboro from the Oklahoma cities was six cents higher per hundred pounds than the rate to Memphis on the same products. He was first employed in August, 1922, and he details efforts he made to secure a reduction of the freight rates from that time on until some time in September, 1923, at which time the rate was reduced to become effective October 1, 1923, making the rate from the Oklahoma cities to Arkansas cities the same as that of the rate from the Oklahoma cities to Memphis, Tennessee. At the time the contract was entered into between the appellee and the appellant, appellee was to receive an amount equal to fifty per cent. of what he saved the appellant covering a three-year period. After the reduction was effected by the appellee, he procured the freight bills for the previous year and figured what the amount would be for the following three years, and the appellant, on that basis, would owe him the sum of $1730.52, provided the rates remained the same and the appellant moved the same number of cars each year. Appellee demanded of appellant a settlement, and it declined to pay appellee, claiming that it had sold its business and would receive no benefit from the reduced rate. Appellee introduced considerable correspondence with the freight traffic commissioner of the Frisco showing the work performed by him, and he testified that the service was for a period of a year or more before he obtained the reduction. He detailed the expenses that he had incurred in performing the services under his contract with the appellant and stated that a fair estimate of the same would be $250. On cross-examination he stated that the agreement with the appellant was oral.

Witness H. P. Noyen testified that he was chief clerk to the assistant freight traffic manager of the Frisco railroad. The appellee filed with him an oral complaint, asking for a reduction of the freight rate to Jonseboro during the early part of August, 1922. At that time the

railroad company had a rate of 28½¢ per hundred pounds to Memphis, Tennessee, from the Oklahoma cities mentioned and 34½¢ per hundred from the same cities in Oklahoma to Jonesboro and other intermediate points in Arkansas. The proposal for the reductions was turned down, but the rate was finally reduced from the Oklahoma cities to Arkansas cities to 27½¢ per hundred, the same as the rate from the Oklahoma cities to Memphis, Tennessee, and it was through the efforts of the appellee that the reduction was made. Appellee was notified about April 4, 1923, that his claim for reduction was denied, but afterwards the reduction was made and put into effect October 1, 1923. Appellee explained at the time he filed the complaint that the appellant was a shipper to Jonesboro and Marked Tree, Arkansas.

W. B. Redding testified that he had been a traffic or freight expert for about fifteen years, and was familiar with the fees paid to experts in such capacities. He had heard the testimony of the appellee and of the witness, Noyen, as to the services rendered by the appellee to the appellant and a reasonable fee for such services would be fifty per cent. of whatever amount was involved. That was the usual fee. Witness considered that $1730 would be reasonable compensation for the work appellee did.

It was agreed by counsel for the parties that the appellant was authorized to do business in Arkansas and could sue and be sued in this State.

Jack Reed was called as a witness by the appellant, and testified that he was president of the appellant during the month of August, 1922. Appellee worked for the appellant from June 1, 1922, five or six months until appellant sold its Arkansas properties. The witness had a conversation with the appellee in March, 1922, about the rate to Jonesboro. He was president of the appellant at that time. He stated that he agreed with the appellee to give him one-half of what he saved the appellant over a period of three years, if he secured a reduction in the freight rates from Oklahoma cities to

Jonesboro and other Arkansas cities. Witness never heard anything more about the reduction in rates until after the appellant had sold out about the 25th of August, 1923. After appellant sold out, appellee came over to witness' office and informed appellant that the freight rates had been reduced, and witness then told appellee that it would not be of any benefit to appellant. Witness told appellee that whatever expenses he had incurred, witness would be glad to make it right with him. Appellant never received any benefit whatever from the reduced rates, as it had sold out before the date the rate was issued and before it went into effect. Appellant never shipped any oil after the new rate went into effect. Witness told appellee at the time the contract was entered into that he would only give appellee half of the savings to the appellant. There was nothing said at the time about estimating it or when appellant was to pay it. Witness was never convinced that appellee had rendered any services to appellant. Witness was not convinced that the reduction was not a general freight reduction over the entire territory.

Appellee in rebuttal testified that he had frequently discussed the matter with Jack Reed after the contract was entered into and had advised him as to the progress he was making.

The appellant moved the court to declare the law to be that the appellee could not recover upon the contract alleged because of the statute of frauds, and also that the appellee was not entitled to recover upon a *quantum meruit* for the reason that the appellant received no benefit from appellee's services under the oral contract. Appellant asked the court to declare the law generally in favor of the appellant. The court refused these prayers, to which ruling the appellant objected and duly excepted.

The court found that the appellee was employed by the appellant upon an oral agreement on or about August 1, 1922, to secure a reduction in freight rates from

points in Oklahoma on petroleum products to be shipped to Jonesboro, and that the appellee was to receive for his services the sum of one-half the amount saved by the appellant by reason of the reduction in said freight rates for a period of three years following the reduction; that as a result of the appellee's efforts the freight rates were reduced on petroleum products from points in Oklahoma to Jonesboro, Arkansas, to the extent of six cents per hundred pounds, to be made effective October 1, 1923, and that appellant had sold its interests at Jonesboro, Arkansas, previous to the date said reduction in rates went into effect and thereby prevented the full carrying out of the contract. The court declared the law to be that the appellee was entitled to recover from the appellant on a *quantum meruit* in the sum of $750. The appellant duly excepted. The court rendered a judgment in favor of the appellee in the sum of $750, from which is this appeal.

1. Section 4862 of Crawford & Moses' Digest provides:

"No action shall be brought: * * *

(6) To charge any person upon any contract, promise or agreement that is not to be performed within one year from the making thereof, unless the agreement, promise or contract upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized."

The appellant contends that the contract proved by the appellee comes within the above statute, and cites to sustain his contention the cases of *Meyer* v. *Roberts,* 46 Ark. 80; *Henry* v. *Wells,* 48 Ark. 485; *Oakleaf Mill Co.* v. *Cooper,* 103 Ark. 79; *Izard* v. *Ins. Co.,* 128 Ark. 433. Unquestionably, under the plain terms of the statute and these authorities, if the contract in evidence was not to be performed within one year from the making, as was the case in the authorities above mentioned, then the

contract would be within the statute of frauds, and the judgment of the court would be erroneous because the appellee is suing on an alleged contract, and, if not to be performed within a year, the appellant was entitled to have the cause tried on the issue raised by the pleadings and was entitled to the declaration of law for which it prayed.

We cannot concur, however, in the view of learned counsel for the appellant that the contract proved by the appellee was one not to be performed within a year. On the contrary, the testimony of the appellee and of his witness, Noyen, shows that the contract was one that fixed no definite date for its performance. It was one that could be entered upon and performed at the earliest date possible after the making and before the expiration of one year from the date the contract was entered into. The appellee did enter upon the performance of his contract immediately and rendered the services which he was engaged to render long before the expiration of one year from the date of the making of the contract. It is true the fruition of appellee's labors did not come to the appellant until after the expiration of a year from the date of the contract, but the appellee actually performed the services called for under his contract before that time. Undoubtedly, the testimony of the appellee tends strongly to prove that the reduction of the freight rates which was made effective October 1, 1923, was the direct result of the services of the appellee under his contract with the appellant. The contract was not rendered void within the statute of frauds because the consideration for the appellee's services was fixed at an amount equal to one-half the sum saved by the appellant for a period of three years after the reduction. That was simply a method adopted by the parties for valuing the services rendered by the appellee under his contract.

Here the undisputed testimony shows that the contract was one which could be performed by the appellee within a year, although there was a possibility, and even

a probability, that it might require a longer time. Such contracts do not come within the statute of frauds. The statute applies only to agreements which appear from their terms to be incapable of performance, or such as the parties never contemplated should be performed, within a year. *Meyer* v. *Roberts,* 46 Ark. 80; *Ry. Co.* v. *Whitley,* 54 Ark. 199; *Sweet* v. *Desha Lbr. Co.,* 56 Ark. 629; *Sullivan* v. *Winters,* 91 Ark. 149; *Valley Planting Co.* v. *Wise,* 93 Ark. 1; *Hampton* v. *Caldwell,* 95 Ark. 387; *Thomas* v. *Croom,* 102 Ark. 108; *Graham* v. *Jonesboro, L. C. & E. R. Co.,* 111 Ark. 598; *Johnson* v. *Cheek,* 163 Ark. 176. See also 25 R. C. L. p. 454, §§ 29 and 30; Wood on Statute of Frauds, § 275, p. 479; case note to *White* v. *Fitts,* 15 L. R. A. (N. S.) 313, 102 Me. 240.

It follows that, even though the court erred in declaring that the appellant was entitled to the value of his services on a *quantum meruit* basis, nevertheless the appellant is not in an attitude to complain of such error because, under the law as above announced, the judgment of the court should have been bottomed on the contract, and the court under the testimony of the appellee might have found for him the entire consideration of the contract which appellee's testimony tended to prove. The court found for the appellee in less than half that sum. Therefore, the appellant has no cause to complain, as the error in the court's ruling was not prejudicial to it. The judgment is affirmed.